IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WEATHERFORD INTERNATIONAL, LLC and WEATHERFORD U.S., LP, | § § § § | |
| Plaintiff, | § § | Civil Action No. 4:23-cv-02420 |
| v. | § § | |
| SAYAMIK NAJAF MOHAMMED AMEEN, | § § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § § | |

## COMPLAINT

Plaintiffs Weatherford International, LLC and Weatherford U.S., LP (collectively, "Weatherford") file this Complaint against Defendant Sayamik Najaf Mohammed Ameen ("Ameen").

## INTRODUCTION

1. This case involves Weatherford's former employee, Ameen, and his unlawful conduct during and after his employment at Weatherford that gives rise to Weatherford's breach of contract, misappropriation of trade secrets, and breach of fiduciary duty claims.

2. Ameen was a high-level Weatherford employee in its Global Digital Solutions group from 2018 until his resignation. Weatherford's Global Digital Solutions group is responsible for the development and maintenance of Weatherford's software solutions, which include Weatherford's Managed Pressure Drilling ("MPD") digital solutions that Ameen supported. By virtue of his positions at Weatherford, Ameen had access to Weatherford's trade secret and confidential information related to its highly successful MPD product line. This information,

1

which is not known to Weatherford's competitors, distinguishes Weatherford from its competitors in the MPD market and was developed through significant time and expense.

3. Ameen recently resigned from Weatherford and accepted employment with a direct competitor in the MPD technology space, Enhanced Drilling, Inc. ("Enhanced"). Upon resigning, Ameen refused to disclose the name of his new employer and mislead his colleagues into believing he was not going to work for an MPD competitor.

4. Before leaving Weatherford, Ameen, without authorization and in violation of his common law, contractual, and/or statutory obligations, intentionally transferred, downloaded, and/or uploaded Weatherford's confidential information and trade secrets relating to its MPD technology to a personal external storage device and to personal cloud storage accounts and retained such information after leaving Weatherford.

5. Ameen is primed to leverage this information to help grow Enhanced's MPD product and service offerings in a manner that puts Weatherford's confidential and proprietary information and trade secrets at risk. Ameen's unlawful actions must be enjoined before he can cause further irreparable harm to Weatherford's legitimate business interests, including its trade secrets, confidential and proprietary information, and client relationships.

**PARTIES**

6. Plaintiff Weatherford International, LLC is a Delaware limited liability company with its headquarters and principal place of business located in Harris County, Texas at 2000 St. James Place, Houston, Texas 77056.

7. Plaintiff Weatherford U.S., LP is a Louisiana limited partnership with its headquarters and principal place of business located in Harris County, Texas at 2000 St. James Place, Houston, Texas 77056.

8. Defendant Sayamik Najaf Mohammed Ameen is an individual residing in Travis County, Texas, and may be served with process at his residence at 1100 S. Lamar Blvd., Austin, Texas 78704, or wherever he may be found.

## JURISDICTION

9. This Court has original subject matter jurisdiction over this case under 28 U.S.C. § 1331 because Weatherford's claims against Ameen arise under the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*. This Court also has supplemental jurisdiction over Weatherford's remaining state and common law claims under 28 U.S.C. § 1367 because Weatherford's claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

10. This Court has personal jurisdiction over Ameen because he is a citizen and resident of Texas and because this lawsuit arises from Ameen's contacts with Weatherford in Texas.

## VENUE

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because Ameen resides in Texas, a substantial portion of the acts or omissions giving rise to Weatherford's claims occurred in this District (as set forth herein), and/or because Ameen is subject to this Court's personal jurisdiction for this action.

## FACTS COMMON TO EACH CLAIM FOR RELIEF

**A.     Weatherford's Business**

12. Weatherford is a leading global energy services company providing equipment and services used in the drilling, evaluation, construction, completion, production, intervention, and responsible abandonment of wells in the oil and natural gas exploration/production industry. As one of the world's largest oilfield services companies, Weatherford conducts operations in

3

approximately 75 countries, answering the challenges of the energy industry with 345 operating locations including manufacturing, research and development, service, and training facilities.

13.     Weatherford invests substantial resources into building its technology offerings, which enable its customers to evaluate, develop, and produce from their oil and natural gas reservoirs.  Weatherford's products and services enable its customers to increase production rates while reducing costs of drilling and production.

14.     One of the key technologies Weatherford provides to its customers so that they can achieve their drilling goals is MPD products and services, which help manage wellbore pressures to optimize drilling performance.  As a leader in MPD technology, Weatherford has designed a portfolio of MPD technologies over the past five decades that enhances safety, lowers well-construction costs, reduces well-control risks, and increases production (collectively, "MPD Technology").  For example, Weatherford's Victus MPD System helps operators precisely maintain bottomhole pressure in operations from land to deep water by providing real-time analysis and rapid responses using the industry's most advanced algorithmic model.  Weatherford's PressurePro Control System is purpose-built for onshore applications by maintaining wellbore pressures within the required window with minimal supervision during managed pressure, underbalanced, and flow drilling.

15.     Certain information developed by Weatherford related to its MPD Technology is highly confidential and proprietary trade secret information, including, but not limited to, proprietary computer program code and proprietary algorithms, models, methods, plans, designs, concepts, improvements, modifications, research data, results, and know-how related to Weatherford's MPD Technology.

16. This information was developed by Weatherford through significant time and expense. Weatherford keeps this information secret because if competitors had access to it, they could avoid the cost and risk associated with assessing, entering, and operating in the market for MPD products and services.

17. Weatherford protects the secrecy of this information by, among other things: (i) not making this information available to the public or Weatherford's competitors; (ii) requiring employees, vendors, and customers to sign confidentiality and/or nondisclosure agreements; (iii) restricting access to this information to select employees; and (iv) using password-protected computers.

**B.  Ameen's Employment at Weatherford**

18. On December 16, 2013, Weatherford hired Ameen as a Field Engineer and signed his Agreement Regarding Employment with Weatherford ("Employment Agreement"). A true and correct copy of the Employment Agreement is attached as Exhibit A. In the Employment Agreement, Ameen agreed that he would not disclose any of Weatherford's "trade secrets or proprietary or confidential information, directly or indirectly, or use them in any way, either during the term of his[] employment or at any time thereafter, except as required in the course of his[] employment by [Weatherford]," and that he would not remove any property, including "[a]ll files, records, documents, drawings, specifications, equipment, and similar items related to the business of [Weatherford]." Ex. A at § III ("TRADE SECRETS").

19. Ameen was promoted multiple times during his career at Weatherford. Specifically, in 2017, Ameen was promoted to Technical Sales Specialist and signed a promotion agreement ("2017 Promotion Agreement"), a true and correct copy of which is attached as Exhibit B. In 2018, Ameen was promoted to Global Technical Manager of MPD and signed a promotion

agreement ("2018 Promotion Agreement"), a true and correct copy of which is attached as Exhibit C.  The 2017 Promotion Agreement and the 2018 Promotion Agreement included additional terms related to Weatherford's confidential, proprietary, and trade secret information designed to protect such information from unauthorized disclosure or use.  Ex. B at ¶ 1; Ex. C at ¶ 1.

20. As Global Technical Manager, Ameen worked with MPD software daily to ensure proper system operations and business objectives were being met.

21. In 2019, Ameen received and accepted terms for a Retention Award ("2019 Retention Agreement"), a true and correct copy of which is attached as Exhibit D, because Weatherford believed he "play[ed] a critical role in the transformation of Weatherford and its subsidiaries."  The 2019 Retention Agreement included terms related to the protection of Weatherford's confidential, proprietary, and trade secret information.  Ex. D at ¶ 3.

22. In February 2022, Ameen was transferred to Product Manager of MPD Software. Ex. E.  In this high-level position, Ameen managed the overall business of the Victus software in support of global operations and was involved with product line strategy, product development, and technical support.  As a result, Ameen had access to Weatherford's trade secret and confidential information related to MPD software development, testing, updating, and future planning.

23. On March 15, 2023, Ameen resigned from his high-level position as Product Manager of MPD Software at Weatherford.  Ameen's official last day at Weatherford was March 22, 2023.  However, because he was out of the country at the time of his resignation, he was unable to return his Weatherford-issued computer and cell phone until April 4, 2023.

24. On April 4, 2023, Ameen signed a Separation Acknowledgement, a true and correct copy is attached as Exhibit F.  In his Separation Acknowledgement, Ameen agreed that he had "returned all Weatherford confidential, proprietary, and/or trade secret information and property,"

and that he "[did] not have, and [would] not keep, use or share, any Weatherford confidential, proprietary, and/or trade secret information (or any copies thereof) at any point from now and into the future." Ex. F at p. 2. He also agreed that he understood "that even after my employment ends, I continue to be obliged to protect Weatherford's confidential, proprietary, and/or trade secret information." *Id*.

25. At all times during his employment with Weatherford, Ameen worked in various Weatherford facilities located in Houston, Harris County, Texas. On information and belief, subsequent to his Weatherford resignation, Ameen moved to Austin, Texas, and is working for Weatherford's direct competitor, Enhanced.

**C. Ameen's Conduct Surrounding His Resignation**

26. The day after his resignation (March 16, 2023), the last day of his employment (March 22, 2023), and the day he executed his Separation Acknowledgement (April 4, 2023), Ameen spoke with Weatherford HR personnel about his separation from Weatherford. During two of those conversations, Ameen acknowledged that he was going to work for a company in the oil and gas drilling services market, but he falsely claimed his new employer was not a competitor in the MPD Technology space. Ameen did not disclose the name of his new employer to Weatherford's HR personnel. Upon information and belief, Ameen did not disclose the name of his new employer to anyone at Weatherford.

27. During those discussions with Weatherford's HR personnel, Ameen was explicitly reminded of the confidentiality and trade secrets provisions of his employment agreements. Indeed, Ameen was sent copies of his 2018 Promotion Agreement and 2019 Retention Agreement during those discussions and was instructed that he must abide by the confidentiality (and other) provisions of those agreements.

7

28. After Ameen tendered his resignation, a forensic analysis of Ameen's Weatherford-issued laptop that he returned upon his resignation revealed that Ameen improperly took and/or retained Weatherford's confidential, proprietary, and trade secret information. Specifically, the forensic analysis of Ameen's laptop revealed the following information about Ameen's activities prior to his departure from Weatherford:

- Ameen connected his personal large-capacity Seagate external storage device multiple times in 2023 (most recently on March 3, 2023), and forensic artifacts show that this device contained Weatherford's confidential and trade secret information related to, among other things, Weatherford's MPD Technology;

- Ameen used multiple non-Weatherford cloud storage accounts, including Google Drive, Box, Dropbox, and Mega, to download numerous files in the weeks leading up to his resignation from Weatherford, showing that these accounts contain Weatherford confidential and trade secret information;

- Ameen sent multiple emails (some with attachments) from his Weatherford account to multiple personal email accounts and, upon information and belief, retained this information;

- Ameen erased his search and browsing history prior to returning his Weatherford laptop, but artifacts indicate that Ameen searched "how to back up emails from outlook" on March 15, 2023, and then backed up his Weatherford emails; and

- Ameen executed a mass file deletion from the Documents folder of his user profile on March 21, 2023 (his second-to-last day at Weatherford).

29. Ameen's actions in taking and/or retaining Weatherford's confidential, proprietary, and/or trade secret information, in direct violation of his employment agreements, has caused and will continue to cause irreparable harm to Weatherford's confidential information, trade secrets, goodwill, business reputation, and customer relationships.

## COUNT I
### (Breach of Contract)

30. Weatherford re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

31. On December 16, 2013, Ameen signed the Employment Agreement. Ex. A. The Employment Agreement includes Ameen's promise not to disclose or use Weatherford's trade secrets or confidential information except as required in the course of his employment with Weatherford, and not to remove Weatherford's property (including files, records, documents, drawings, and specifications) without its consent. *Id*. at § III.

32. Ameen signed the 2017 Promotion Agreement on July 17, 2017 (Ex. B), signed the 2018 Promotion Agreement on May 10, 2018 (Ex. C), and signed the 2019 Retention Agreement on March 3, 2019 (Ex. D). The 2017 Promotion Agreement includes Ameen's promise not to reveal, disclose, make known, or use any of Weatherford's confidential information obtained during his employment at Weatherford, whether or not developed or created by his efforts. Ex. B at ¶ 1. The 2018 Promotion Agreement and the 2019 Retention Agreement include similar promises by Ameen. Ex. C at ¶ 1; Ex. D at ¶ 3.

33. On April 4, 2023, Ameen signed the Separation Acknowledgement. Ex. F. The Separation Acknowledgement includes Ameen's agreement and representation that he returned all of Weatherford's confidential, propriety, and trade secret information and property, including, without limitation, all Weatherford documents and data. *Id.* at p. 2. The Separation Acknowledgement also includes Ameen's agreement and representation that he did not have and would not keep, use, or share any Weatherford confidential, propriety, and trade secret information at any point from then and into the future. *Id*.

34. The Employment Agreement, 2017 Promotion Agreement, 2018 Promotion Agreement, 2019 Retention Agreement, and Separation Acknowledgement (collectively, "Agreements") are valid, enforceable, and binding contracts. The Agreements protect

Weatherford's legitimate business interests, including its proprietary, confidential, and trade secret information, and its client and employee relationships.

35. Weatherford provided Ameen with continued employment, compensation increases, and/or access to and actual provision of confidential and proprietary information, among other things, in exchange for executing the Agreements.

36. Ameen breached the Agreements by copying, taking, retaining, and/or removing from Weatherford's premises Weatherford's proprietary, confidential, and trade secret information related to, among other things, Weatherford's MPD Technology.

37. As a natural, probable, and foreseeable consequence of Ameen's breaches, Weatherford has suffered and continues to suffer damages for which Ameen is liable, including diminished value of its confidential information, damaged goodwill with customers, and loss of its competitive advantage.

38. Weatherford's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief.

39. Ameen's actions will continue to irreparably harm Weatherford if not enjoined.

40. Should the Court grant injunctive relief to Weatherford, the burden on Ameen would be slight compared to the injury to Weatherford if injunctive relief is not granted.

41. Further, Ameen agreed injunctive relief would be an appropriate remedy in the event he breached his Employment Agreement. Ex. A at § VI.C.

42. Granting an injunction will not disserve the public interest. Indeed, injunctive relief protecting confidential and proprietary information and trade secrets is consistent with the public interest and with Ameen's Employment Agreement.

43. As a party and signatory to the Agreements, Weatherford is the proper party to bring suit for breach of the Agreements.

44. Weatherford has performed and/or tendered performance of its contractual obligations pursuant to each of the Agreements.

45. Weatherford is entitled to recover its reasonable attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(b) and Ameen's Employment Agreement. Ex. A at § VI.C.

46. Weatherford is entitled to injunctive relief to prevent imminent and irreparable harm in the future for which it has no adequate remedy at law.

### COUNT II
### (Violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 2836 *et seq*.)

47. Weatherford re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

48. Weatherford is the owner of valid and enforceable trade secrets, including, but not limited to, the trade secrets in Weatherford's Victus MPD software, in the computer program code of such software, and in proprietary algorithms, constants, methods, plans, designs, concepts, improvements, modifications, research data, results, and know-how related to Weatherford's MPD Technology.

49. All of Weatherford's trade secrets are confidential, proprietary, and highly valuable trade secrets and derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

50. Weatherford has invested significant amounts of time and money in developing the information and continually uses the information in its business. Weatherford's trade secrets are of great value to it and would be of great value to its competitors.

51. Weatherford took reasonable precautions to maintain the secrecy of these misappropriated trade secrets, including by maintaining confidentiality provisions in employment agreements with key employees (including Ameen), by maintaining secured networks and databases, and by limiting access to such information by others.

52. Accordingly, these categories of information are trade secrets under the Defend Trade Secrets Act because they are: (1) within the subject matter of trade secrets; (2) the subject of reasonable efforts to protect the secrecy of these categories of information; (3) economically valuable to competitors; (4) not readily ascertainable by proper means; and (5) related to a product or service used in, or intended for use in, interstate or foreign commerce.

53. During the course and scope of Ameen's employment with Weatherford, Ameen was exposed to and had access to Weatherford's trade secrets. As part of his employment, Ameen agreed in writing—on multiple occasions—not to disclose or take any trade secret or confidential information belonging to Weatherford, and agreed to return all Weatherford documents and data upon termination of employment. Upon termination of his employment, Ameen further agreed that he had returned all of Weatherford's confidential, propriety, and/or trade secret information and property, and promised that he did not have and would not keep, use, or share any Weatherford confidential, propriety, and/or trade secret information at any point from then and into the future.

54. Through his employment at Weatherford, and as set forth in the Agreements, Ameen had notice that Weatherford's misappropriated trade secrets were confidential, proprietary, and highly valuable.

55. Ameen misappropriated Weatherford's trade secrets by copying, taking, and/or retaining them without authorization or any legal right to do so and in breach of Ameen's contracts and fiduciary duties.

56. Moreover, upon information and belief, Ameen's misappropriation of Weatherford's trade secrets has been and is willful and malicious.

57. As a direct and proximate result of Ameen's misappropriation, Weatherford has suffered and will continue to suffer damages and irreparable harm, including, but not limited to, harm to its reputation, good will, customer relationships, and its competitive advantage.

58. Weatherford has no adequate remedy at law for such present and future irreparable harm and, therefore, is entitled to equitable relief in addition to compensatory relief.

59. Ameen's actions will continue to cause irreparable harm and damages to Weatherford if not enjoined. Weatherford therefore seeks injunctive relief against Ameen under 18 U.S.C. § 1836(b)(3).

**COUNT III**
**(Violation of the Texas Uniform Trade Secrets Act,**
**Tex. Civ. Prac. & Rem. Code Ann. § 134A.001, *et seq*.)**

60. Weatherford re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

61. Weatherford is the owner of valid and enforceable trade secrets, including, but not limited to, the trade secrets in Weatherford's Victus MPD software, in the computer program code of such software, and in proprietary algorithms, constants, methods, plans, designs, concepts, improvements, modifications, research data, results, and know-how related to Weatherford's MPD Technology.

62. All of Weatherford's trade secrets are confidential, proprietary, and highly valuable trade secrets and derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

63. Weatherford has invested significant amounts of time and money in developing the information and continually uses the information in its business. Weatherford's trade secrets are of great value to it and would be of great value to its competitors.

64. Weatherford took reasonable precautions to maintain the secrecy of these misappropriated trade secrets, including by maintaining confidentiality provisions in employment agreements with key employees (including Ameen), by maintaining secured networks and databases, and by limiting access to such information by others.

65. Accordingly, these categories of information constitute trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA") because they are: (1) within the subject matter of trade secrets; (2) the subject of reasonable efforts to protect the secrecy of these categories of information; (3) economically valuable to competitors; and (4) not readily ascertainable by proper means.

66. During the course and scope of Ameen's employment with Weatherford, Ameen was exposed to and had access to Weatherford's trade secrets. As part of his employment, Ameen agreed in writing—on multiple occasions—not to disclose or take any trade secret or confidential information belonging to Weatherford, and agreed to return all Weatherford documents and data upon termination of employment. Upon termination of his employment, Ameen further agreed that he had returned all of Weatherford's confidential, propriety, and/or trade secret information and property, and promised that he did not have and would not keep, use, or share any Weatherford confidential, propriety, and/or trade secret information at any point from then and into the future.

67. Through his employment at Weatherford, and as set forth in the Agreements, Ameen had notice that Weatherford's misappropriated trade secrets were confidential, proprietary, and highly valuable.

68. Ameen misappropriated Weatherford's trade secrets by copying, taking, and/or retaining them without authorization or any legal right to do so and in breach of Ameen's contracts and fiduciary duties.

69. Moreover, upon information and belief, Ameen's misappropriation of Weatherford's trade secrets has been and is willful and malicious.

70. As a direct and proximate result of Ameen's misappropriation, Weatherford has suffered and will continue to suffer damages and irreparable harm, including, but not limited to, harm to its reputation, good will, customer relationships, and its competitive advantage.

71. Weatherford has no adequate remedy at law for such present and future irreparable harm and, therefore, is entitled to equitable relief in addition to compensatory relief.

72. Ameen's actions will continue to cause irreparable harm and damages to Weatherford if not enjoined. Weatherford therefore seeks injunctive relief against Ameen under Chapter 134A.003 of the Texas Civil Practice and Remedies Code.

73. Because Ameen's misappropriation was willful and malicious, Weatherford seeks exemplary damages under Chapter 134A.004 of the Texas Civil Practice and Remedies Code.

**COUNT IV**
**(Breach of Fiduciary Duty)**

74. Weatherford re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

75. As a possessor of Weatherford's trade secrets and confidential and proprietary information, Ameen owed Weatherford a fiduciary duty not to misappropriate such information.

76. In his roles at Weatherford, Ameen also owed Weatherford a duty of loyalty to act in Weatherford's best interest and to not divulge Weatherford's trade secrets or steal its information. This duty continued after Ameen resigned from Weatherford.

77. Ameen breached his fiduciary duties for his own benefit and for the benefit of Enhanced by misappropriating Weatherford's information, including trade secrets and confidential and proprietary information, which, upon information and belief, he is using to solicit business on behalf of Enhanced, a competing company.

78. As a result of such breach by Ameen, Weatherford has suffered damages for which Ameen is liable, including lost profits, loss of customers, and loss of future business opportunities and good will.

79. Weatherford is also entitled to injunctive relief to prevent imminent and irreparable harm in the future for which it has no adequate remedy at law.

## JURY DEMAND

80. Weatherford hereby demands a jury trial on all triable issues.

## PRAYER FOR RELIEF

81. Upon trial on the merits, Weatherford requests that it be awarded:

   a. a preliminary and permanent injunction enjoining and restraining Ameen, his agents, representatives, associates, employees, and all those acting in concert or participation with him, from using any Weatherford confidential information for his own benefit and from disclosing confidential information to anyone not authorized to receive the information;

   b. an order requiring Ameen to return all Weatherford confidential information in his possession, custody, or control to Weatherford;

   c. all actual, compensatory damages to be determined at trial;

   d. an award of exemplary damages;

   e. Weatherford's costs and fees, including attorneys' fees, associated with bringing this action; and

   f. such other and further relief as the Court may deem appropriate.

DATED: June 30, 2023

Respectfully submitted,

By: */s/ John R. Keville*
John R. Keville
Attorney-in-Charge
Texas State Bar No. 00794085
Southern District of Texas ID No. 20922
JKeville@sheppardmullin.com

Eric Schlichter
Texas State Bar No. 24007994
Southern District of Texas ID No. 23321
ESchlichter@sheppardmullin.com

Michael C. Krill
Texas State Bar No. 24097954
Southern District of Texas ID No. 2782784
MKrill@sheppardmullin.com

Tomas Pradia
Texas State Bar No. 24108478
Southern District of Texas ID No. 3842532
TPradia@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
700 Louisiana Street, Suite 2750
Houston, Texas 77002-2791
Telephone: (713) 431-7100
Facsimile: (713) 431-7024

**COUNSEL FOR PLAINTIFFS WEATHERFORD INTERNATIONAL, LLC AND WEATHERFORD U.S., LP**